The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson* (1991), 77 Ohio App.3d 212.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–102.

Decided Sept. 16, 1991.

*Steven C. LaTourette*, Prosecuting Attorney, and *Cynthia A. Sasse*, Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante*, Lake County Public Defender, and *David Farren*, Assistant County Public Defender, for appellant.

---

NADER, Judge.

This appeal is brought by appellant, Walter D. Johnson, from his conviction on the charge of robbery in violation of R.C. 2911.02 with the "prior specification of violence."

On December 5, 1989, Marilyn Roberts and her mother, Betty Vanvliet, were robbed as they were leaving the Cabin Restaurant in Willowick, Ohio. A man approached the women, offered to assist them, and then grabbed the purses of both women. The two purses were being carried by Marilyn Roberts as she was helping her mother, an elderly stroke victim, to the car. A struggle ensued and Roberts was forced to the ground and kicked repeatedly.

The police arrived and both women and another witness, Dominic Ilc, gave general descriptions of the suspect. On December 11, 1989 the two women were asked to pick their assailant out of a photo lineup. Roberts testified that she first identified photo number one as having the correct skin tone, and then identified photo number five as having the correct features and being her assailant. Photograph number five was a picture of appellant.

Vanvliet also picked photograph number one initially, and she testified that this was based on the man's skin tone. After Roberts had finished inspecting the photographic array, Vanvliet was then asked to look again at the photos. This time, after being told to disregard the skin tone, Vanvliet picked photo number five, appellant's picture.

Ilc was asked to inspect the photographic array on December 12, 1989, and picked appellant's picture as being the man he saw struggling with the two women.

Appellant was arraigned on December 12, 1989 and a bond was set at $1,500 cash or surety. On December 20, 1989, appellant was bound over to the grand jury and bond was then set at $7,000 cash or surety. On January 25, 1990,

the grand jury returned a true bill indicting appellant on two charges of robbery in violation of R.C. 2911.02. Appellant filed a motion to reconsider and reduce his bond, which was denied; however, the court reset the bond at $7,000 personal recognizance, rather than cash or surety.

On March 27, 1990, appellant filed a motion to suppress the photographic identification on the grounds of unduly suggestive procedures. A hearing on the motion was held on April 13, 1990, and at the hearing a police report of the identification procedure was read into the record. This report stated:

"At 21:28 hours Mrs. Roberts and Mrs. Vanvliet came to the station to view a photo lineup which included Walter D. Johnson. Both women were asked to independently view photos of six black males that were selected by Lieutenant Walsh to look similar to the suspect. Both women first picked the wrong photo. They both picked the Laphoson Williams [*sic*] because of his skin tone. Both women were talked to again separately by me and requested to look a second time disregarding the skin shade due to the fact that the pictures were not taken in all cases under the same lighting conditions with the same camera or film."

At the conclusion of the hearing, the judge pronounced from the bench that the motion would be denied. No written journal entry of the court's determination on the matter was ever filed. On April 23, 1990, the grand jury returned a secret indictment again charging appellant with two counts of robbery; now, however, to each count was added the specification that appellant had previously been convicted of robbery. Appellant's bond was set at $7,000 cash or surety.

On May 31, 1990, appellant filed a motion to dismiss the second indictment on the grounds of prosecutorial vindictiveness. On June 5, 1990, the trial court granted the prosecution's June 1, 1990 motion to consolidate the two indictments. The trial commenced on June 4th, 1990.

The jury returned a verdict of guilty on count one of robbery and a verdict of not guilty on count two of robbery. On July 18, 1990 appellant, after stipulating to the "prior specification of violence," was sentenced to twelve to fifteen years incarceration, of which twelve will be actual incarceration.

Appellant now appeals, raising the following assignments of error:

"1. The trial court erred to the prejudice of the defendant-appellant in overruling the defendant-appellant's motion to suppress the photographic identification testimony."

"2. The trial court erred to the prejudice of the defendant-appellant in overruling his motion to dismiss the indictment based on prosecutorial vindictiveness."

"3. The trial court erred to the prejudice of the defendant-appellant in overruling his motion for a Crim.R. 29 judgment of acquittal made at the close of the state's case when the evidence was against the manifest weight of the evidence."

In his first assignment of error, appellant sets forth the factors affecting the reliability of identification testimony in *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, and then he argues that, in this case, each factor supports the suppression of the identification testimony. Those factors were reiterated in *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 9 O.O.3d 71, 72–73, 377 N.E.2d 1008, 1010–1011, which states:

"Although the identification procedure may have contained notable flaws, this factor does not, *per se,* preclude the admissibility of the subsequent in court identification. See *State v. Barker* (1978), 53 Ohio St.2d 135, 142–143 [7 O.O.3d 213, 217–218, 372 N.E.2d 1324, 1330–1331]. As noted in *Manson v. Brathwaite* (1977), 432 U.S. 98 [114, 97 S.Ct. 2243, 2253], 53 L.Ed.2d 140, 154. ' * * * reliability is the linchpin in determining the admissibility of identification testimony * * *.' The factors affecting reliability include ' * * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' *Neil v. Biggers* (1972), 409 U.S. 188, 199 [93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411]. Thus although the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is admissible. *Manson, supra* [432 U.S. at 109–111, 97 S.Ct. at 2250–2251, 53 L.Ed.2d] at 151."

Appellant argues that there was little opportunity to observe the suspect, as the period before the assault was brief, and during the struggle the women's attention was focused primarily on their own safety. Thus, appellant argues minimal opportunity to view the suspect.

Further, appellant contends the degree of attention of the female witnesses was diminished by the struggle, while Ilc's attention was focused on sounding the alert and gaining assistance. Ilc was too busy getting help to have any sort of a high degree of attention as to the identification of the assailant.

Appellant casts doubt on the prior description of the attacker as being too general: a tall, black man. Appellant asserts that the witnesses failed to state that the assailant had a facial scar. Appellant maintains that his prominent facial scar would characterize the previous descriptions as inaccurate.

Appellant then attacks the witnesses' certainty during the photographic lineup. He characterizes this process as both women choosing another person initially, and then identifying appellant as their assailant only after the police suggestively urged the women to disregard skin tone and to be certain of their choices.

Finally appellant contends that the state could have arranged the photographic lineup sooner than the six-day period which lapsed between the incident and the identification process. In his brief appellant states that the police had his name on the night of the incident, and therefore improperly created a risk of misidentification.

*State v. Johnson* (Feb. 16, 1990), Trumbull App. No. 4013, unreported, at 5 and 6, 1990 WL 13114, states:

"An accused is denied due process of law if ' * * * the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *' *Simmons v. United States* (1968), 390 U.S. 377 [88 S.Ct. 967, 19 L.Ed.2d 1247].

" * * *

"In *Manson v. Brathwaite* (1977), 432 U.S. 98 [97 S.Ct. 2243, 53 L.Ed.2d 140], the Supreme Court held that these factors were applicable to photographic identifications in addition to lineups. The *Manson* court applied the totality of the circumstances test, permitting the admission of the evidence if, despite the suggestive aspect, the identification possesses certain features of reliability."

In the instant action, the totality of circumstances permits the admission of the identification evidence. The suggestive aspect is minimal. During the photographic lineup, Roberts indicated that photograph number one was correct as to skin tone and photograph number five was correct as to facial features. The officer then explained that due to various lighting differences the skin tone should be ignored. The officer also gave a similar explanation to Vanvliet, who had earlier identified a photograph of someone other than appellant, and after re-examining the photographic array, she then chose the same man identified by the other two witnesses.

Moreover, there was evidence presented at the suppression hearing contradicting appellant's arguments of misidentification. Mrs. Roberts testified to observing her assailant as he approached, as well as during the assault. Roberts's identification of her assailant never waivered, nor did the identification of Ilc. Furthermore, the aspects of suggestibility put forth by appellant are minimal at best, and appellant does not sufficiently place the reliability of

the identification in question. As such, appellant's first assignment of error is without merit.

It should be noted that *no* written judgment entry denying the motion to suppress was ever filed in the lower court. This court recently held in *Kent v. Logan* (May 31, 1991), Portage App. No. 90–P–2219, unreported, 1991 WL 95228, that such an omission by the trial court constituted prejudicial error requiring the action to be reversed and remanded to the trial court. However *Logan* is distinguishable from the case at bar. *Logan*, at 5, states:

" * * * the critical point is that the record before us does not indicate the factual foundation upon which the trial court's judgment on appellant's motion is predicated."

"Given the state of the record, this court is unable to address the merits of appellant's assignments at this time. Under normal circumstances, the failure of the appellant to provide a complete transcript of the presented evidence would warrant the affirmance of the trial court's decision."

In *Logan* it is clear that this court lacked a complete transcript of the hearing on the motion to suppress. *Madison Twp. v. Consilio* (Dec. 5, 1986), Lake App. No. 11–109, unreported, 1986 WL 14366, does not indicate whether the entire transcript was made available upon review in this court. All that is known is that the trial court made an oral pronouncement from the bench determining the motion to suppress.

In the instant action a transcript of the hearing on the motion to suppress has been provided upon appeal to this court, and the trial court's oral pronouncement is transcribed along with the reasons for such denial. This factual distinction, coupled with Crim.R. 52, should allow this court to find that the absence of a written judgment entry is harmless error. Crim.R. 52(A) states:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

In *State v. Nelson* (1977), 51 Ohio App.2d 31, 33, 5 O.O.3d 158, 159, 365 N.E.2d 1268, 1270, the Eighth District Court of Appeals held that, although it was error for the trial court to dismiss an indictment without entering written findings, the error did not prejudice the state's appeal, as the reasons for the ruling were clear.

In the instant action, appellant was not prejudiced, nor was he hindered in his attempt to appeal the denial of the motion to suppress, as the court's rulings were readily available. This point is further illustrated by the failure of appellant to raise the lack of a judgment entry as error.

There are numerous unreported cases in which the trial court has failed to set forth *essential findings* in support of its decision on the motion to suppress in violation of Crim.R. 12, and the appellate court has held that the transcript provides adequate evidence of those findings. See *State v. Waddy* (Nov. 2, 1989), Franklin App. No. 87AP–1159, unreported, 1989 WL 133508; *State v. Jameson* (Jan. 23, 1989), Montgomery App. No. 10936, unreported, 1989 WL 5811; *Cleveland v. Iacampo* (Dec. 27, 1990), Cuyahoga App. No. 57796, unreported, 1990 WL 212117; and *Cleveland v. Rivera* (Apr. 25, 1991), Cuyahoga App. No. 58456, unreported, 1991 WL 64328.

In these cases, the appellate courts have held that such an error by the trial court is harmless error at most. It is difficult to see any great distinction between our present case and the above cited cases.[1,2]

From *Consilio* and *Logan, supra,* this court's concern for the interlocutory nature of such a ruling without a written entry is abundantly clear. While it is axiomatic that a court speaks only through its journal, there must also be some complementary doctrine of "merger" in order to render interlocutory decisions appealable once a final judgment is entered in the case. When the trial court entered its final judgment in the instant case, it was divested of its ability to amend any of its interlocutory orders, and thus they became final orders as well.

In appellant's second assignment of error, he alleges that the trial court erred in failing to dismiss the indictment for prosecutorial vindictiveness. Appellant argues that the prosecutor's decision to reindict, adding the specification of a previous robbery conviction, was meant only to punish appellant for filing a motion to suppress. *State v. Wilson* (1988), 47 Ohio App.3d 136, 137, 547 N.E.2d 1185, 1186, states:

"The United States Supreme Court has repeatedly recognized the uncontroverted principle that '[t]o punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." ' *United States v. Goodwin* (1982), 457 U.S. 368, 372 [102 S.Ct. 2485, 2488, 73

---

1. Nor is this case like that of *State v. Harrington* (May 13, 1988), Sandusky App. S–87–13, unreported, 1988 WL 47373, in which no ruling was ever made on the motion for summary judgment and a hearing on the motion was still pending in the trial court.

2. It should also be noted that several unreported cases make note of the fact that no entry was ever filed determining the motion to suppress; however, the courts either make no further comment on the issue or they presume the trial court's ruling based on the outcome of the cases. See *State v. Gerhardt* (Nov. 26, 1974), Franklin App. Nos. 74AP–386 and 74AP–387, unreported; *State v. Bailey* (Sept. 16, 1977), Seneca App. No. 13–77–66, unreported; and *State v. Hawver* (May 17, 1989), Tuscarawas App. No. 88AP090065, unreported, 1989 WL 63292.

L.Ed.2d 74, 79–80]. See, also, *Bordenkircher v. Hayes* (1978), 434 U.S. 357 [98 S.Ct. 663, 54 L.Ed.2d 604]; *Blackledge v. Perry* (1974), 417 U.S. 21 [94 S.Ct. 2098, 40 L.Ed.2d 628]; *North Carolina v. Pearce* (1969), 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656]."

■ In order to deter such activities by the government, the original indictment will be dismissed when prosecutorial vindictiveness is discovered.

*Goodwin, supra,* is important for more fully explaining the distinction between a presumption of vindictiveness and actual vindictiveness. *Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488, 73 L.Ed.2d at 80–81, discussing the presumption of vindictiveness, states:

" * * * Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists."

The presumption typically arises only when the procedural history of the case reasonably indicates the likelihood of vindictiveness. Such a procedural history is found in *Perry* and *Pearce, supra.* In these two cases, the defendants were given the right to a new trial through postconviction procedures, and after the second trial the defendants were given much harsher sentences.

*Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492, 73 L.Ed.2d at 85–86, also discusses the use of the presumption in the pretrial setting, stating:

"There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

" * * * *

"In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; * * *. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. * * * "

After warning against the use of a presumption in the pretrial setting, *Goodwin*, at 384, 102 S.Ct. at 2494, 73 L.Ed.2d at 87, points to the defendant's ability to prove actual vindictiveness, stating:

"In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do. * * * *"

■ In the instant action, the procedural history does not give rise to a presumption of prosecutorial vindictiveness. Appellant was originally bound over to the grand jury on December 20, 1989 and indicted on January 25, 1990, no plea bargaining was entered, and, on March 27, 1990, appellant filed a motion to suppress. A hearing was held on the matter on April 13, 1990. The grand jury then secretly indicted appellant on April 23, 1990 with the two original counts including the additional specification that appellant had been previously convicted of robbery. These facts alone do not warrant the imposition of a presumption against the prosecution requiring the proof of a legitimate purpose.

■ However, appellant is not foreclosed from proving actual vindictiveness. At the hearing on the motion, appellant argued that the prosecution was aware of his prior record at some time prior to the prosecutor's discovery answer of February 8, 1990. Further, appellant's attorney testified, under oath concerning the actions of the prosecutor, Ariana Tarighati, stating:

" * * * my recollection is that I had some conversation, prior to the motion to suppress hearing, with Ms. Tarighati. At that time she indicated to me that if we were going to put her through this shit, that she would re-indict the Defendant with the specifications."

The prosecutor testified that she had previously indicated the state's intention to reindict defendant with the specifications. Further, she testified that she did not recall such a conversation ever occurring. Moreover, the state put forth evidence that it was unable to properly identify appellant as the person previously convicted until April 23, 1990, by the use of fingerprints. While the state need not use this form of identification in every case of a prior conviction specification, the actions of appellant necessitated the use of fingerprints.

While the transcript of the criminal docket, filed on December 26, 1989, had appellant's social security number ("SSN") as 372–56–0104, on each document on which appellant provided his SSN, he indicated SSN 281–46–2245. This resulted in the state needing additional evidence of appellant's identification.

Therefore, appellant failed to demonstrate actual vindictiveness by the prosecution, and the trial court properly denied appellant's motion to dismiss the indictment. Accordingly, appellant's second assignment of error is without merit.

In appellant's third assignment of error, he maintains that the trial court erred in overruling his motion for acquittal.

"When a motion to acquit under Crim.R. 29(A) is overruled, the question is whether, viewing the evidence in a light most favorable to the government, a reasonable mind might fairly find each element of the offense beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261 [9 O.O.3d 401, 381 N.E.2d 184]." *Cincinnati v. Robben* (1982), 8 Ohio App.3d 203, 204 [8 OBR 274, 275, 456 N.E.2d 1255, 1256]. See, also, *State v. Ryan* (Jan. 25, 1988), Ashtabula App. No. 1316, unreported.

R.C. 2911.02 states:

"No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

The testimony of the three eyewitnesses establishes that appellant used force in committing a theft offense, and therefore the trial court properly denied appellant's motion for acquittal. As such, appellant's third assignment of error is without merit.

Based upon the foregoing analysis, the decision of the trial court is hereby affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, P.J., and BASINGER, J., concur.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.