OPINION
Defendant-appellant Shawn L. Nash appeals the September 5, 2000 Judgment Entry of the Stark County Court of Common Pleas which found appellant guilty of failure to comply with the order or a signal of a police officer and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On March 4, 2000, at approximately 2:30 a.m., Massillon Police Department Officers Rich Siskie and Justin Duncan were on routine patrol in a marked cruiser in downtown Massillon. The officers observed a green Chevy Malibu, approximately three to four hundred yards ahead, commit a lane violation. The officers sped up in order to run a check of the vehicle's license plate number and registration. As the officers got closer, they were able to see two black males in the front seat of the vehicle. The officers could also discern the driver of the Malibu was wearing a jacket and a black nylon skull cap.
Officer Siskie thought he recognized the driver and thought the men could be heading for a particular house on Urban Court Street. Officer Siskie advised Officer Duncan, who was driving the police cruiser, to activate the lights in order to stop the vehicle before it arrived at the residence. Initially, the Malibu slowed down in response to the police lights, but then quickly sped up, continuing at a high rate of speed through the residential area.
The officers noted there were other vehicles parked on the street, and the Malibu came within a foot or two of striking one of the parked cars. The posted speed limit was 25 mph and Officer Siskie estimated the Malibu was traveling as fast as 40 mph. The officers followed in the cruiser as the Malibu sped through the Main Street intersection without stopping for the stop sign, and continued through surrounding residential areas. The driver of the Malibu never used turn signals and continually failed to stop at stop signs and traffic lights. The Malibu also failed to adequately slow down to make turns, and as a result, swerved into oncoming lanes of traffic. Officer Duncan had a difficult time keeping up with the car.
The Malibu continued on this path until it went through the intersection of Tremont Avenue. At that time, the Malibu was traveling at approximately 60 mph. Again, the vehicle failed to stop or slow down for the stop sign. As the Malibu approached a convenience store on the corner, it sped through the store's parking lot, and hit a ramp. As a result, the vehicle rose up and nearly become airborne.
The Malibu then continued at a high rate of speed going through yet another intersection at a speed between 60 and 70 mph. Eventually, the driver stopped the Malibu, and two men fled from the vehicle. The driver, who was wearing a skull cap, headed north while the passenger ran south. Officer Siskie recognized appellant as the driver but could not think of his name. Appellant turned and looked directly at Officer Duncan, who then chased appellant until Officer Siskie asked him to assist in the chase of the passenger.
Massillon Det. Gary McPherson responded to Officer Siskie's radio call for assistance, and was positioned just north of where the Malibu stopped. Officer McPherson saw the driver running his way and gave chase. Although Officer McPherson lost appellant momentarily, he spotted him again walking on Urban Court Street. Officer McPherson yelled for assistance and another officer caught and arrested appellant. At the time of his arrest, appellant was wearing a skull cap. Officer McPherson further testified he recognized appellant because they were relatives.
Appellant was taken back to the scene of the abandoned car, and Officer Siskie identified him as the driver of the car. After searching the car, Officer Siskie found a pager in the street by the driver's door of the Malibu. The pager belonged to appellant.
On June 15, 2000, the Stark County Grand Jury indicted appellant with one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331, a felony of the third degree. Appellant plead not guilty to the charge at his June 16, 2000 arraignment. The matter proceeded to a jury trial on August 21, 2000. On August 22, 2000, after hearing all the evidence, the jury found appellant guilty of the sole count of the indictment.
In a September 5, 2000 Judgment Entry, the trial court sentenced appellant to one year in prison. The trial court ordered the sentence to be served concurrently with a appellant's conviction in Stark County Court of Common Pleas Case No. 2000CR0345. The trial court further ordered appellant's driver's license to be suspended for a period of six months. It is from this judgment entry appellant prosecutes his appeal, assigning the following as error:
 I. THE VERDICT FINDING APPELLANT GUILTY OF WILLFULLY FLEEING OR ELUDING A POLICE OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SUSTAIN APPELLANTS'S [SIC] MOTION TO DISMISS THE SECOND INDICTMENT FOR WILLFULLY FLEEING OR ELUDING A POLICE OFFICER WHICH WAS THE RESULT OF PROSECUTORIAL VINDICTIVENESS AND THEREFORE VIOLATED APPELLANT'S DUE PROCESS RIGHT TO A FAIR PROCEEDING.
 I
In his first assignment of error, appellant maintains the jury verdict was against the manifest weight of the evidence and therefore, contrary to law. We disagree.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Appellant maintains the State failed to show beyond a reasonable doubt he was the individual operating the motor vehicle and/or he caused a substantial risk of serious physical harm to persons or property.
With regard to appellant's first claim the evidence did not show he was driving the car, we find the testimony of Officers Siskie, Duncan and McPherson established the identity of appellant. Officer Siskie testified he saw appellant exit the vehicle. While he could not identify by name, he had a "very good idea" who to look for. Tr. at 126. Officer Siskie testified while he was not able to identify appellant by name, he was able to identify him by face and clothing.
Officer Duncan testified he first saw the back of the driver's head. He noticed the driver was wearing a black skull cap. Officer Duncan participated in the chase of appellant and testified at one point "the driver turned and looked directly at me, looked at me right in the face." Tr. at 173. Officer Duncan identified appellant in the courtroom as the driver of the vehicle.
Finally, Officer McPherson testified the driver of the Malibu had abandoned the vehicle and was running northbound when he (Officer McPherson) joined in the chase. Because Officer McPherson was further north than the driver, Officer McPherson ran directly toward the driver. While he was unable to identify the driver by name, Officer McPherson noticed the driver running toward him wearing a black skull cap. After chasing this suspect for some time, Officer McPherson noticed the driver was in fact, his relative, appellant.
We find the testimony of Officers Siskie, Duncan and McPherson provided competent credible evidence upon which the jury could base its judgment. Accordingly, we find the identification of appellant as the driver of the vehicle was supported by the manifest weight of the evidence.
Appellant next contends the jury's finding appellant caused a substantial risk of serious physical harm to persons or property was against the manifest weight of the evidence. Appellant points out the pursuit lasted only two minutes and there was no evidence the driver's excessive speed or violation of the traffic signals caused a risk of serious physical harm to persons or property. Appellant also notes the evidence showed the streets were clear, and there was no evidence of pedestrians being in danger or even in the proximity of the pursuit. Finally, appellant points out the officers did not testify they were in fear for their own physical safety of the safety of their vehicle.
"Substantial risk" is statutorily defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C.2901.01(A)(8). "Serious physical harm to persons" and "serious physical harm to property" are both defined in R.C. 2901.01. The statute provides, in pertinent part:
 (5) "Serious physical harm to persons" means any of the following:
* * *
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
 (6) "Serious physical harm to property" means any physical harm to property that does either of the following:
 (a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;
 (b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.
In the matter sub judice, the evidence before the jury demonstrated appellant drove at an excessive rate of speed, at times reaching almost 70 mph, in residential and business areas. As noted supra, both Officers Siskie and Duncan testified appellant did not use his turn signals, did not stop at traffic signs, and did not slow down while negotiating turns. As a result of this conduct, appellant at times failed to maintain his lane, and narrowly missed hitting parked cars on residential streets.
We find this to be competent, credible evidence to support the jury's finding appellant's reckless driving created a substantial risk of serious physical harm to persons and property.
Accordingly, appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, he maintains the trial court abused its discretion in failing to grant his motion to dismiss the second indictment for willfully fleeing or eluding a police officer. Appellant maintains this second indictment was a result of prosecutorial vindictiveness and therefore violated appellant's due process right to a fair proceeding. We disagree.
Appellant's August 3, 2000 Motion to Dismiss contains three exhibits. The police department prisoner information sheet, the April 28, 2000 indictment against appellant and the June 15, 2000 indictment. The prisoner information sheet detailed the charges against appellant on the evening of his arrest. At that time, appellant was charged with reckless operation, a minor misdemeanor; driving under suspension, a misdemeanor of the first degree; failure to comply with the order or signal of a police officer, a misdemeanor of the first degree; and receiving stolen property, a felony of the fourth degree. The April 28, 2000 indictment charged appellant with one count of receiving stolen property in violation of R.C. 2913.51, and one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331, a felony of the fourth degree. The June 15, 2000 indictment charged appellant with one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331, a felony of the third degree. On appeal, Appellant maintains his due process rights were violated because his re-indictment contained a more serious felony charge then the first indictment based upon the same facts.
Although the facts are not contained in our record, the parties agree the State moved to dismiss the April 28, 2000 indictment. The State maintains the dismissal was necessary because the owner and victim of the stolen car refused to cooperate in the prosecution. Accordingly, the trial court entered the nolle prosequi, and dismissed the first indictment.
The State then re-presented the case to the Stark County Grand Jury, which returned the June 15, 2000 indictment. The new indictment was based upon R.C. 2921.331(B)(5)(a)(ii).[1] This provision determines a person willfully eluding a police officer after receiving a visible or audible sign to bring the motor vehicle to a stop, is a felony of the third degree if the trier of fact, finds by proof beyond a reasonable doubt the operation of the motor by the offender cased a substantial risk of serious physical harm to persons or property.
Appellant's motion to dismiss was predicated on prosecutorial vindictiveness. Specifically, appellant argued the second indictment, which charged appellant with the elevated third-degree felony, was improper. Although there is no entry in the record, the trial court overruled appellant's motion to dismiss on the day of trial. The trial court determined appellant had not demonstrated an improper motive on the part of the prosecutor and the issue before the court was whether the evidence presented at trial would support the charge. As noted above, appellant was found guilty of the sole count in the June 15, 2000 indictment.
A nolle prosequi is a withdrawl of an indictment, which if done before jeopardy has attached, does not prohibit re-indictment. State v. Dixon
(1984), 14 Ohio App.3d 396, 397. In the matter sub judice, the first indictment was dismissed prior to the attachment of jeopardy. Accordingly, the dismissal did not preclude re-indictment.
In United States v. Goodwin (1982), 457 U.S. 368, 372, the United States Supreme Court held due process prohibits prosecutorial vindictiveness in punishing "a person because he has done what the law plainly allows him to do." Accordingly, in certain instances, the Supreme Court has permitted a presumption of vindictiveness on the part of the prosecutor. However, these circumstances are narrow:
 Motives are complex and difficult to prove. As a result, in certain cases in which actions detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to `presume' an improper vindictive motive. Given the severity of presumption, however which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct — the Court has done so only in cases in which a reasonable likelihood of vindictiveness exist.
Id. at 373.
For example, the United States Supreme Court has found a due process violation when the trial judge imposed a harsher sentence on retrial after the defendant's initial conviction was reversed on appeal. NorthCarolina v. Pearce (1969), 395 U.S. 711, 725. See, also Blackledge v.Perry (1974), 434 U.S. 357 (where the Supreme Court held re-indictment by a prosecutor violated due process where the defendant successfully challenged his original misdemeanor conviction on appeal and was then indicted for a felony arising from the same facts). In these cases, the State was permitted to overcome the presumption of vindictiveness only by "factual data" in the record "so that the constitutional legitimacy of the increased sentence" could be "fully reviewed on appeal." Pearce,395 U.S. at 726.
The Supreme Court has specifically refrained the extending the presumption of vindictiveness to the pretrial context. See, Goodwin,supra. As noted in Goodwin, supra: [a] prosecutor should remain free before trial to exercise the broad discretion intrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct."
Id. at 382.
Ohio courts have also followed this pretrial/post-trial designation in assessing a presumption of prosecutorial vindictiveness. State v.Semenchuk (1997), 122 Ohio App.3d 30, 37-38 (holding re-indictment on more serious charges after a defendant refused to plead guilty did not constitute prosecutorial vindictiveness); State v. Johnson (1991),77 Ohio App.3d 212, 219-222, (holding a defendant fails to show actual vindictiveness by the prosecutor in obtaining a second indictment against the defendant adding prior conviction specifications after the defendant filed a suppression motion); State v. Wilson (1998), 47 Ohio App.3d 136,137-140 (holding that a prosecutor's decision to seek a second indictment, with prior conviction specification, after the defendant refused to plead and instead invoked his right to trial was not presumptively the result of vindictiveness).
In a pretrial setting, a prosecutor is free to seek indictment on whatever the evidence can support, and no presumption of vindictiveness will attach if the defendant was clearly subject to those charges at the outset. Semenchuk, supra, 122 Ohio App.3d 38.
In the matter sub judice, appellant has made no showing of actual vindictiveness on the part of the prosecutor in dismissing the first indictment and seeking re-indictment on a higher level felony then originally charged. Although the second indictment did charge appellant with a more serious version of willfully fleeing, it is clear from the record appellant was clearly subject to those charges at the outset. Further, the trial court correctly noted the record did not demonstrate any improper motivation or vindictiveness on the prosecutor's part. Accordingly, we find no error in the trial court's denial of appellant's motion to dismiss.
Appellant's second assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
By: Hoffman, J. Edwards, P.J. and Farmer, J. concur.
[1] Appellant's first indictment was based upon R.C. 2921.331(C)(4), which determines a person operating a motor vehicle and willfully fleeing or eluding a police officer after receiving a visible or audible sign to bring the motor vehicle to a stop is a felony of the fourth degree if the jury or judge, as trier of fact, finds by proof beyond a reasonable doubt that, in committing the offense, the offender was fleeing immediately after the commission of a felony.