OPINION
{¶ 1} Appellant William Staten pleaded guilty to one charge of murder, with a gun specification, in the Mahoning County Court of Common Pleas. Appellant argues that his plea was invalid because the state threatened to indict him on more serious charges if he did not accept the plea. Appellant acknowledges that a prosecutor may use the possibility of filing more severe charges, i.e., a death specification, as leverage during the plea bargain process. Appellant argues, though, that there is no proof in the record that he entered into his plea voluntarily in light of the threat that more serious charges could be filed. Appellant also contends that the record does not support the prosecutor's claim that more serious charges could be filed. For these reasons, Appellant believes his plea should be vacated.
 {¶ 2} Our review of the record reveals that the trial judge engaged in a significant colloquy with Appellant concerning all the circumstances surrounding the guilty plea and the reasons underlying the plea. Furthermore, Appellant has not cited any authority that would require the trial court to independently verify that a prosecutor could file more serious charges.
 {¶ 3} Appellant also claims ineffective assistance of counsel, based primarily on Appellant's perception that the time period between the indictment and the guilty plea was too short for counsel to adequately review and understand the facts of the case. In actuality, Appellant's counsel had been retained over two months prior to the guilty plea, and counsel effectively assisted Appellant in avoiding a capital murder charge. For reasons more fully explained below, we find that Appellant's assignments of error are without merit, and the judgment of the trial court is hereby affirmed.
 {¶ 4} The record indicates that on February 23, 2000, Appellant was arrested for the aggravated murder of Andre Reeder, with a death specification and a gun specification attached. (See Youngstown Municipal Court appearance docket.) Appellant hired his counsel on that same day.
 {¶ 5} On March 8, 2000, Appellant waived preliminary hearing and agreed to be bound over to the Mahoning County Grand Jury. On April 13, 2000, the grand jury indicted Appellant on one count of murder in violation of R.C. § 2902.02(A) and (C). This crime is punishable by an indefinite term of 15 years to life in prison. R.C. § 2929.02(B). The indictment also contained a gun specification pursuant to R.C. §2941.145(A), which carried a mandatory prison term of three years. The charges in this indictment were prepared in response to prior plea negotiations that had occurred between Appellant and the Mahoning County prosecutor's office. (5/4/2000 Plea Hearing Tr., p. 3.)
 {¶ 6} The record reveals that the shooting occurred on February 19, 2000. The victim was 17 years old at the time of the crime, and he appears to have been a friend of Appellant. (5/15/2000 Tr., p. 12.) Appellant had his eighteenth birthday just prior to the shooting. Appellant shot at Mr. Reeder up to seven times, and then fled to the state of Maryland. (5/15/2000 Tr., pp. 12-13.)
 {¶ 7} On April 25, 2000, Appellant was arraigned and pleaded not guilty to the charge. The journal entry filed by the trial court noted that Appellant was not indigent and had retained his own counsel.
 {¶ 8} On May 4, 2000, Appellant signed a written guilty plea in which he pleaded guilty to the murder charge and gun specification. After a hearing, the trial court accepted the guilty plea. A sentencing hearing was held on May 15, 2000. On May 24, 2000, the trial court sentenced Appellant to 15 years to life in prison, as well as imposing a consecutive three-year prison term for the gun specification. Appellant was given credit for 76 days already served in incarceration. The trial court also found that Appellant had become indigent.
 {¶ 9} Appellant filed a pro se appeal on October 7, 2003. On November 4, 2003, this Court granted Appellant permission to proceed with a delayed appeal, and counsel was appointed.
 {¶ 10} Appellant's first assignment of error asserts:
 {¶ 11} "Appellant's guilty pleas was [sic] induced by threats rendering the plea an involuntary act and void as a violation of appellant's due process rights. U.S. Constitution Amend. XIV, Ohio Constitution Art. 1 § 10."
 {¶ 12} Appellant presents two subissues in this assignment of error, which are as follows:
 {¶ 13} "A. Is the trial court's failure to inquire into whether appellant was coerced into pleading to the indictment without any factual support in the record for the threat to reindict a denial of due process rendering the plea void.
 {¶ 14} "B. Is a plea entered as a result of the government's threat to reindict when the trial court fails to seek inquiry into the facts supporting the threat and defense counsel fails to conduct any investigation of any of the charges void as involuntary."
 {¶ 15} Before dealing with these two subissues, we must address some issues raised by Appellant's counsel at oral argument that were materially different from arguments raised in Appellant's brief on appeal. At oral argument, counsel primarily asserted that the trial judge failed to specifically and directly ask Appellant if he was making his plea voluntarily, and therefore, counsel concluded that the plea was not voluntary. This contrasts with the argument made in Appellant's brief, which deals with whether the trial court engaged in a meaningful dialog with Appellant about the threat of reindictment on a capital murder charge, or whether there was a factual basis behind the state's threat that more serious charges could be filed if Appellant did not accept the plea. There were indications during oral argument that counsel had abandoned some of the issues and reasoning set forth in the first assignment of error in Appellant's brief. Although we will discuss the errors raised in Appellant's brief, we will focus our attention on the issues emphasized at oral argument.
 {¶ 16} Appellant contends, correctly, that a guilty plea is invalid when it is not made voluntarily, knowingly and intelligently, citingParke v. Raley (1992), 506 U.S. 20, 28-30, 113 S.Ct. 517, 121 L.Ed.2d 391. Appellant points out that Crim.R. 11(C)(2) requires a trial court, before accepting a guilty plea, to determine if the plea is being made voluntarily:
 {¶ 17} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 18} "(a) Determining that the defendant is making the pleavoluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 19} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 20} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." (Emphasis added.)
 {¶ 21} A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of federal constitutional rights. These include the right to trial by jury, the right of confrontation, and the privilege against self-incrimination. Boykin v. Alabama (1969), 395 U.S. 238,243-244, 89 S.Ct. 1709, 23 L.Ed.2d 274.
 {¶ 22} On the other hand, substantial compliance with Crim.R. 11(C) is sufficient when waiving nonconstitutional rights. See State v. Stewart
(1977), 51 Ohio St.2d 86, 92-93, 364 N.E.2d 1163. Appellant agrees with the proposition that compliance with Crim.R. 11 need not always be strict, and that in some circumstances a plea will be considered knowing and voluntary as long as the court substantially complies with Crim.R. 11(C). "Substantial compliance" in this context means that, under the totality of the circumstances, the defendant subjectively understands the consequences of the plea and the nature of the rights being waived. Statev. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
 {¶ 23} Appellant contends, though, that even under the "substantial compliance" standard, a trial court has a duty to clearly determine more than whether or not a defendant understands the plea, but rather, whether he or she voluntarily accepts the consequences of the plea. Appellant contends that a trial judge, "is charged with the responsibility of evaluating the motivations behind the guilty plea", quoting State v.Armstead (2000), 138 Ohio App.3d 866, 871, 742 N.E.2d 720.
 {¶ 24} Appellant asserts that the trial court glossed over the threats made by the prosecutor that more serious charges would be filed if Appellant did not accept the plea. Appellant cites the following sections of the plea hearing transcript in which the trial court began asking Appellant whether any threats or promises were made to Appellant, and then reworded her question to take into account that the plea was based, in part, on the discussion that a possible death specification could be filed:
 {¶ 25} "THE COURT: * * * Did anybody promise you that you better come in here, plead guilty or — rephrase this. I understand that there were discussions and you were told by the prosecutor and your attorney that if you did not plead guilty to this charge as indicted, to a murder charge with a firearm specification, that perhaps the Mahoning County Grand Jurors would take another look at your case and do what's called a superseding indictment, which means bringing an additional charge against you, a more serious murder charge, perhaps a murder charge that carries with it a death specification. Do you understand that?
 {¶ 26} "THE DEFENDANT: Yes.
 {¶ 27} "THE COURT: Okay. And that's why you're in here. So you understand what you're doing then?
 {¶ 28} "THE DEFENDANT: Um-hum.
 {¶ 29} "THE COURT: You normally — did anybody promise you or did anybody threaten you — and I understand this is a Criminal Rule 11 agreement, and in exchange for not having a superseding indictment carrying with it a — perhaps a death specification, that you are pleading guilty to a penalty of life. Do you understand that?
 {¶ 30} "THE DEFENDANT: Yes." (5/4/2000 Tr., pp. 16-17.)
 {¶ 31} It has long been acknowledged that a plea bargain is, "contractual in nature and subject to contract-law standards." State v.Butts (1996), 112 Ohio App.3d 683, 686, 679 N.E.2d 1170. As a preliminary matter, it should be self-evident that a plea that results from Crim.R. 11 plea negotiations necessarily involves a bargaining process, bargaining that includes threats and promises of some degree or nature being exchanged between the defendant and the state. If the parties have nothing with which to bargain, there would be no reason to enter into plea negotiations. The point of a judge asking whether or not any promises or threats were made that induced the plea is to uncover possible promises and threats made outside of the plea bargaining process. Although Crim.R. 11 does not explicitly set this out, the federal counterpart, Fed.R.Crim.P. 11(b)(2), actually incorporates this concept into the rule:
 {¶ 32} "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." (Emphasis added.)
 {¶ 33} The record contains Appellant's written guilty plea, which acknowledges that threats and promises may have been part of the plea bargaining process, and that Appellant entered his plea voluntarily in the light of any threats and promises:
 {¶ 34} "I Now certify that this plea is freely and voluntarily made and not, in any way, coerced or induced by any threats or promises of any kind other than those stated pursuant to criminal rule 11(f) (plea bargaining) of which my attorney has fully advised me and stated in open court." (5/4/00 Plea of Guilty, p. 4.)
 {¶ 35} Appellant's argument relies primarily on State v. McCullough,
12th Dist. No. CA2001-10-015, 2002-Ohio-5453, in which the Twelfth District Court of Appeals permitted the defendant to withdraw his guilty plea because the trial court failed to enter into a meaningful colloquy with the defendant regarding the voluntariness of the plea. TheMcCullough opinion provides a litany of deficiencies at the plea hearing:
 {¶ 36} "Other than brief questions about threats and promises, the court did not inquire into the voluntariness of appellant's plea. Although the charges were mentioned, no inquiry was conducted to determine if appellant understood the nature of the charges against him. The indictment was not read at the hearing, and neither the charges nor the underlying facts were described. The trial court did not describe the effect of pleading guilty and it did not explain that a guilty plea is an admission of the defendant's guilt. See Crim.R. 11(B)(1). The trial court did not inform appellant that after accepting his plea, it could immediately proceed with judgment and sentence, as it did in this case.
 {¶ 37} "The trial court also failed to enunciate a full and clear statement of appellant's constitutional rights." Id. at ¶ 23-24.
 {¶ 38} In contrast to McCullough, the trial judge in the instant case asked Appellant dozens of questions concerning every aspect of the plea. The judge explained in detail the nature of both the murder charge and gun specification. (5/4/2000 Tr., pp. 5-6, 10-11.) The judge read the indictment. (5/4/2000 Tr., p. 5.) The judge explained that Appellant was specifically being charged with using a gun to cause the death of Andre Reeder on February 19, 2000. (5/4/2000 Tr., p. 6.) The judge asked Appellant to explain, in his own words, the charges against him. (5/4/2000 Tr., pp. 10-11.) The judge set forth the possible penalties. (5/4/2000 Tr., pp. 9-10). The judge explained that there was no discretion in the sentence in this case. (5/4/2000 Tr., pp. 3, 12.) The judge explained how a jury trial works, and that Appellant was giving up his right to a jury trial. (5/4/2000 Tr., pp. 6-7.) The judge reviewed the right not to incriminate oneself, the right to present a defense, the right to use subpoenas to compel witnesses in his defense, and the right of proof beyond a reasonable doubt. (5/4/2000 Tr., pp. 6-8.)
 {¶ 39} Furthermore, the trial judge confirmed with Appellant that he reviewed the written guilty plea form with his attorney, that it was his signature on the form, and that he signed it in the presence of his attorney. (5/4/2000 Tr., p. 13.) As noted earlier, the plea form specifically states that Appellant had entered his plea voluntarily. "[A] written waiver is presumptively voluntary, knowing, and intelligent."State v. Fitzpatrick, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 37.
 {¶ 40} Although the trial judge never specifically used the word "voluntary" in its lengthy colloquy with Appellant, the colloquy as a whole was the trial court's method of ascertaining whether the plea was being made voluntarily. For example, at one point that trial judge told Appellant: "You don't have to cooperate. If you were going to a jury right now, we would not be having this conversation. Do you understand that?" (5/4/2000 Tr., p. 11.) Appellant acknowledged that he understood. (5/4/2000 Tr., p. 11.) There does not seem to be a significant difference between explicitly asking, "are you entering this plea voluntarily," and, "do you understand that you do not have to cooperate, and you could let a jury decide this case."
 {¶ 41} Toward the end of the plea hearing the trial judge asked, "[s]o you understand what you're doing then?", and Appellant responded with, "[u]m-hum." (5/4/2000 Tr., pp. 16-17.) Again, there does not seem to be a significant difference between this question and a question such as, "do you voluntarily accept what you are doing?"
 {¶ 42} It is clear from the record that the egregious circumstances that existed in McCullough did not occur in the instant case, and thatMcCullough is inapposite to the resolution of the instant appeal.
 {¶ 43} It must be pointed out the primary means for a trial court to ascertain that a plea is being made voluntarily is to uncover whether the defendant understands the nature of the charges and the constitutional rights that are being waived by pleading guilty:
 {¶ 44} "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, * * * or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." Henderson v. Morgan (1976), 426 U.S. 637, 645,96 S.Ct. 2253, 49 L.Ed.2d 108, fn. 13.
 {¶ 45} On the other hand, there is no guarantee that a plea would be voluntary, in the constitutional sense, simply because a defendant might answer "yes" if the trial judge specifically asked whether the plea was being made voluntarily. If the record indicates that the defendant did not understand the nature of the proceedings, the consequences of the plea, the elements of the charges, or the significance of such things as the right to a jury trial, the right to present evidence or the right to confront witnesses, then we would construe that the plea was not being made voluntarily. In the instant case, although the trial judge did not ask the direct question, "are you entering this plea voluntarily in light of more serious charges possibly being filed in the future," it is clear that Appellant understood the charges and the possible penalties, understood the rights he was waiving, and accepted the consequences of his plea. It is also clear that Appellant was represented by counsel during the entire process. Furthermore, he signed a written plea agreement which explicitly stated that he was entering his plea voluntarily. For these reasons, we cannot conclude that Appellant entered his plea involuntarily merely because the trial judge failed to explicitly ask: "Are you entering this plea voluntarily?"
 {¶ 46} Appellant also alleged that the trial court erred in failing to inquire into the factual basis of the prosecutor's threats, particularly the threat that a capital murder charge would be filed. Appellant cites as authority the case of North Carolina v. Alford (1970), 400 U.S. 25,91 S.Ct. 160, 27 L.Ed.2d 162. Alford dealt with a completely different factual situation in which the defendant entered a guilty plea but also claimed that he did not commit the crime that was the basis of the plea. The instant appeal does not involve an Alford plea, and the analysis ofAlford is not applicable here.
 {¶ 47} Appellant acknowledges that a threat of indictment on more serious charges is not a violation of due process, correctly citing to the holding of the United States Supreme Court of Bordenkircher v. Hayes
(1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. Appellant contends, though, that Bordenkircher presupposes that there are facts in the record that could support more serious charges being brought. Appellant contends that there are no facts in the record in the case at bar that support an indictment for capital murder, and that the trial court had a duty to examine whether there was any basis for a death penalty specification.
 {¶ 48} Appellee also cites Bordenkircher for the proposition that a prosecutor is permitted to use the possibility of reindictment on more serious charges as an inducement in the plea bargain process.Bordenkircher held that: "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a `discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' — and permissible — `attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" Id. at 364, quoting Chaffin v. Stynchcombe (1973), 412 U.S. 17, 31,93 S.Ct. 1977, 36 L.Ed.2d 714.
 {¶ 49} Bordenkircher also held that, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." Id. at 364.
 {¶ 50} Appellee contends that this Court has recently held, in two separate cases, that a trial court has no duty to inquire into the facts and circumstances of a felony guilty plea. See State v. Kramer, 7th Dist. No. 01 CA 107, 2002-Ohio-4176, and State v. Dickey, 7th Dist. No. 03 CA 794, 2004-Ohio-3198. Appellee is correct that these two cases reiterate that Ohio's criminal rules, unlike the federal system, do not require the trial judge to inquire into the factual basis and circumstances of the charges that make up the plea agreement. These cases are not particularly useful, though, in the instant appeal because they did not deal with the issue posed by Appellant, which is whether the court must establish a factual basis to support any other potential charges that are not part of the plea but may have influenced the plea negotiations.
 {¶ 51} Appellant is mistaken when he asserts that there is nothing in the record indicating that more serious charges, including capital charges, could have been filed. This case originated in Youngstown Municipal Court, and the appearance docket from that court indicates that Appellant was originally arrested and charged with aggravated murder with a death specification. The municipal court record explicitly states, more than once, that there is a death specification. These documents indicate that there were at least allegations made to support additional charges.
 {¶ 52} Furthermore, the transcript of the May 4, 2000, plea hearing reveals that the prosecutor did not threaten that capital charges would definitely be issued, but rather, he stated that "if [Appellant] agreed to plead to a murder with a gun specification, we'd indict him as such; if not, we would go for a more serious indictment to the grand jury." (5/4/2000 Tr., pp. 3-4.) Likewise, the trial judge did not characterize the prosecutor's comments as implying that Appellant would definitely be indicted on capital charges, but rather, that "perhaps" the prosecutor would pursue a death specification. (5/4/2000 Tr., p. 16.)
 {¶ 53} The potential death specification was not glossed over by the trial court. The court specifically discussed the plea negotiations and the possible death specification, and then queried: "And that's why you're in here. So you understand what you're doing then?" (5/4/2000 Tr., pp. 16-17.)
 {¶ 54} Concerning Appellant's final argument, the cases he cites do not support the contention that a trial court must sua sponte determine whether facts exist that could support a superseding indictment on more serious charges. The first case cited by Appellant is State v. Collier
(1984), 22 Ohio App.3d 25, 488 N.E.2d 887, which held that, "[i]t is not violative of defendant's due process rights if the prosecuting attorney threatens a further indictment should the defendant refuse a plea bargain offer." Id. at paragraph two of the syllabus. The defendant in Collier was originally arrested for two counts of felony theft and one count of breaking and entering, but the breaking and entering charge was not pursued when the case went before the grand jury: "the prosecuting attorney did not seek an indictment on this charge with the intent of gaining leverage during the plea bargaining process." Id. at p. 26. The defendant argued that the trial was tainted because of the prosecutor's threat of seeking a new indictment on the breaking and entering charge. Id. at 29. The Third District Court of Appeals overruled the defendant's assignment of error, holding that, "the reality of the ultimate goal of the `give-and-take' of plea bargaining justifies the prosecutor's persuasion by threat of another indictment[.]" Id. The Third District based its conclusion on the analysis in Bordenkircher. There was no discussion about whether the evidence supported a further indictment for breaking and entering. Thus, the facts of Collier appear to be virtually identical to those in the instant case, and the result in Collier does not support Appellant's argument.
 {¶ 55} Appellant cites State v. Williams (1999), 104 Ohio Misc.2d 27,728 N.E.2d 50, which examined whether the prosecutor was immune from being charged with criminal coercion in violation of R.C. § 2905.12, based on alleged bad faith during the plea bargain negotiations. The defendant was being prosecuted on misdemeanor charges of improperly handling a firearm, but the prosecutor had indicated to the defendant that he would pursue felony charges if a plea agreement could not be reached. The defendant did not accept the plea and a felony indictment was sought and obtained. Williams is not really applicable to the facts of the instant appeal because the defendant in Williams did not enter into a plea agreement, but rather, exercised his right to trial. At any rate, the ruling in Williams was that the prosecutor did not act in bad faith by threatening to bring felony charges as an inducement to plead guilty to the misdemeanor charges. Id. at 32.
 {¶ 56} Another case cited by Appellant is State v. Johnson (1991),77 Ohio App.3d 212, 601 N.E.2d 555. In Johnson, the defendant argued on appeal that the prosecutor was guilty of prosecutorial vindictiveness by obtaining a superceding indictment on more serious charges after the defendant had exercised his right to file a motion to suppress evidence. Once again, the Johnson case does not involve a plea bargain or a written guilty plea, and does not appear to be on point with the issues involved in the instant appeal.
 {¶ 57} Appellant has not pointed to any authority that would have required the trial court to conduct a further inquiry during the plea hearing concerning the potential death penalty specification. The record indicates that the trial court complied with Crim.R. 11(C) and engaged in a significant dialogue with Appellant dealing with whether he was voluntarily and knowingly entering a guilty plea. The trial court specifically asked Appellant if he understood that the prosecutor was planning to pursue more serious charges if Appellant did not accept the plea agreement. There is nothing in the record that would have given the trial court any reason to ask further questions about the potential death specification. For all of these reasons, Appellant's first assignment of error is hereby overruled.
 {¶ 58} Appellant's second assignment of error asserts:
 {¶ 59} "Defendant was denied effective assistance of trial counsel as guaranteed by the VI and XIV amendments of the united states constitution and by §§ 10 and 16 of Art. I of the Ohio constitution."
 {¶ 60} Appellant recites the current standards for reviewing a claim of ineffective assistance of counsel. In order to succeed in this claim, Appellant has the burden of showing that counsel's performance was deficient and that the deficient performance prejudiced his defense such that it deprived him of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to establish that counsel's representation was deficient, Appellant must demonstrate that counsel's performance fell, "below an objective standard of reasonable representation." State v. Keith (1997), 79 Ohio St.3d 514, 534,684 N.E.2d 47. To establish prejudice in a case involving a guilty plea, Appellant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. State v. Xie (1992),62 Ohio St.3d 521, 524, 584 N.E.2d 715, citing Hill v. Lockhart (1985),474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203. In Ohio, a properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98,100, 477 N.E.2d 1128. The strategic or tactical decisions made by counsel will not normally form a basis for a claim of ineffective assistance of counsel. State v. McNeill (1998), 83 Ohio St.3d 438, 449, 700 N.E.2d 596,1998-Ohio-293.
 {¶ 61} Appellant claims that his trial counsel was ineffective by recommending that Appellant plead guilty to murder only nine days after arraignment. Appellant argues that counsel failed to request a bill of particulars, failed to ask for a preliminary hearing, failed to conduct any discovery, failed to file any motions on behalf of his client, and generally failed to challenge the prosecution in any meaningful way. Appellant contends that counsel's actions violate 1 ABA Standards for Criminal Justice (2 Ed. 1986) 4-4.1(a), which describes counsel's duty to investigate:
 {¶ 62} "Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty."
 {¶ 63} Appellant contends that counsel's actions also violated 1 ABA Standards for Criminal Justice (2 Ed. 1986) 4-6.1(b), which states:
 {¶ 64} "Defense counsel may engage in plea discussions with the prosecutor. Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial."
 {¶ 65} Appellant contends that the ABA Standards for Criminal Justice are an accepted means of establishing what constitutes reasonably competent representation, citing Wiggins v. Smith (2003), 539 U.S. 510,123 S.Ct. 2534, 156 L.Ed.2d 471. It should be noted the Ohio Supreme Court regularly relies on the ABA Standards of Criminal Justice. See, e.g.,State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127; State v. Schaim (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, fn. 6.
 {¶ 66} In response, Appellee contends that the length of time between arraignment and pleading guilty is irrelevant in this case in light of the fact that counsel's actions prevented Appellant from facing prosecution for a capital crime. Appellee contends that Appellant fails part two of the Strickland test because there is no allegation that he would not have pleaded guilty but for counsel's actions. Appellee also points out that nothing in the record reveals that Appellant was dissatisfied with his counsel's representation. These are all valid and persuasive arguments.
 {¶ 67} There are other reasons why we are not convinced by Appellant's argument. First, in contrast to Appellant's assertion, the record reveals that his counsel did file a demand for discovery on March 24, 2000. The record does not indicate the results of this demand.
 {¶ 68} Second, counsel's failure to request a preliminary hearing is not generally an indicator of ineffective assistance of counsel, in that it is viewed as a trial tactic. State v. Nathan (1995),99 Ohio App.3d 722, 727, 651 N.E.2d 1044. Furthermore, waiving preliminary hearing merely binds the matter over to the grand jury, which is then responsible for determining whether probable cause exists to support the charges. Appellant was originally arrested for capital murder, and a preliminary hearing may have established probable cause for capital murder. As the record now stands, Appellant has not been indicted for capital murder, and this may be due to counsel's tactics.
 {¶ 69} Third, Appellant's assertion that only nine days elapsed between arraignment and conviction is misleading. Appellant was actually arrested on February 23, 2000, and remained continuously incarcerated from that point on. He retained his attorney as counsel the same day. Appellant did not plead guilty to the murder charge until May 4, 2000, which was 71 days later. The record does not indicate what type of investigation counsel undertook in that time, but it is certainly possible that counsel could have thoroughly investigated the case during those weeks. Ohio law contemplates that a person who is incarcerated on felony charges will be tried within 90 days after arrest. R.C. § 2945.71. If the case could have been brought to trial within 90 days, it is not unreasonable to expect Appellant's counsel to have been ready to conclude Crim.R. 11 plea negations after 71 days.
 {¶ 70} The main difficulty with Appellant's argument is that it requires this Court to make negative inferences from a silent record. The record does not indicate what type of discovery Appellant's counsel performed, other than that counsel filed a demand for discovery. The record is silent as to why counsel did not file a motion to suppress or motions in limine. The record does not give any insight into the details of what transpired during the plea bargain process. On the other hand, the record does indicate that Appellant was originally arrested for murder, including a death specification, and through counsel's effort Appellant was able to plead guilty to the lesser charge of murder with a gun specification, with the possibility of parole after 18 years. It appears that Appellant's claim for ineffective assistance of counsel necessarily depends on facts that are outside the record. This is outside our scope of review, which is limited to the record on appeal.
 {¶ 71} Based on the aforementioned arguments, Appellant's second assignment of error is hereby overruled. Because there is no merit in either assignment of error, the judgment of the Mahoning County Court of Common Pleas is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.