[Cite as *State v. Goldwin*, 2024-Ohio-4487.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 113341 |
| v. | : | |
| DAVID B. GOLDWIN, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679804-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney and Chauncey Keller, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jennifer Pritchard, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, David B. Goldwin ("Goldwin"), appeals his convictions for felonious assault, disrupting public service, and attempted having a

weapon while under disability, claiming that his guilty plea was not voluntary and defense counsel was ineffective. For the reasons set forth below, we affirm Goldwin's convictions.

## I. Facts and Procedural History

{¶ 2} In April 2023, Goldwin was charged in a five-count indictment. Count 1 charged him with felonious assault. Count 2 charged him with abduction. Count 3 charged him with aggravated menacing. Count 4 charged him with having a weapon while under disability ("HWWUD"). Count 5 charged him with disrupting public service. Each of Counts 1, 2, and 5 carried a one-year firearm specification. The charges arise from allegations that Goldwin assaulted his girlfriend by throwing her to the ground, punching her, strangling her, and putting his knee on her chest. The victim attempted to call 911, but Goldwin took the phone away before she was able to make the call.

{¶ 3} Goldwin pled not guilty and a series of pretrials were held. On September 5, 2023, the court held a change-of-plea hearing and a hearing to determine if Goldwin violated his bond. The matter started with the plea hearing and plaintiff-appellee, the State of Ohio, stated that it would be willing to amend the indictment as follows:

> For Count 1, the State would delete the one-year firearm specification. The State would also nolle Count 2, abduction, a felony 3 and the firearm specification in that count in its entirety. Count 3, aggravated menacing would be nolled. Count 4 would be amended by adding the attempt statute, making it attempted having weapons under disability, a felony of the 4th degree, and [Goldwin] would plead guilty to Count 5, disrupting public services, a felony of the 5th degree. The State

would nolle the firearm specification found underneath that count. [Goldwin] would agree to no contact with the victim in this matter.

(Tr. 3-4.)

{¶ 4} The court then went through its Crim.R. 11 colloquy, which included the advisement that it wanted to ensure that if Goldwin "plead guilty today, that [his] guilty plea is voluntary, [and that he is] not being forced or pressured to do that." (Tr. 4.) Goldwin replied that he was uncertain. Goldwin then told the court that he was 48 years old, he could read and write in English, and that he was not under the influence of any illegal drugs or alcohol. The court asked if Goldwin had any physical or mental illnesses and Goldwin responded: "Yes, I have posttraumatic stress disorder, bipolar, paranoid schizophrenia, I take — for my mental health I take Latuda." (Tr. 6.)

{¶ 5} Goldwin advised the court that he received these mental health diagnoses in 2017. Goldwin detailed his medication history, including that he had "been taking Latuda for almost two years" and described it as "way better." (Tr. 7.) Goldwin told the court that he had been incarcerated at the county jail for the past 14 days, and that during that time, he had been receiving a lower dose of his medication. The court then asked Goldwin if there was anything about his mental health diagnosis that would interfere with his ability to understand the guilty plea hearing. Goldwin replied, "No, no, I mean no, I kind — I get the drift." (Tr. 9.)

{¶ 6} The court explained to Goldwin that if he accepted the plea bargain, he would be admitting that he committed felonious assault on the victim. Goldwin

stated, "[T]hat's not what I want to do." (Tr. 10.) He denied committing the offense and stated that he was trying to locate witnesses to testify on his behalf. The court advised Goldwin to have his witnesses ready for the September 13, 2023 trial date and then proceeded to hold a hearing on Goldwin's bond violation. After the conclusion of this portion of the hearing, the court reinstated Goldwin's bond.

{¶ 7} Defense counsel then advised the court that "[d]uring our recess, [Goldwin] advised that he wishes to go forward with the plea agreement." The trial court and Goldwin had the following exchange:

> [GOLDWIN]: I'll just do that and just try to — I don't want to waste nobody's money.
>
> THE COURT: Trial is set for September 13th at 9:00 but now you want a plea bargain?
>
> [GOLDWIN]: Yeah, I just do that. I don't want to waste no extra time. I just feel like —
>
> THE COURT: Can I interrupt you. Before today have you ever had a plea bargain in a case?
>
> [GOLDWIN]: Yeah, but I had a plea bargain but, you know what, everything is different. I understand, but I'm just like, you know what, I don't want to do the wrong thing.
>
> THE COURT: Can I interrupt you again because I'm going to let you do whatever you want, but I would like to go in sensical order. I'm looking at Case Number of 65089, domestic violence case where you had a plea bargain on May 11, 2022.
>
> . . .
>
> [GOLDWIN]: Yeah, that was me. It was one day in jail then and threw it out.
>
> THE COURT: . . . What I'm getting at is about a year ago, or more, that you had a plea bargain, this is going to be kind of similar to that. If you

have a plea bargain today, you're going to be admitting certain crimes. Do you understand that?

[GOLDWIN]: Yeah.

THE COURT: So are you willing to do that or not? Because a plea bargain where you've said guilty, that's an admission that you did a crime. I mean that's essentially the core of what's going to happen here. If you're not willing to do that, then we won't have the full conversation.

[GOLDWIN]: I understand. I understand.

(Tr. 27-29.)

**{¶ 8}** In light of this, the court reinitiated the Crim.R. 11 plea colloquy. At the start of this exchange, Goldwin again stated that he was uncertain which "route [he] should take." (Tr. 34.) The court went ahead and advised Goldwin of the terms of the plea agreement in case he decided that he was going to plead guilty, including all of the Crim.R. 11 requirements and his possible maximum sentence. Before asking Goldwin how he pled, the court thoughtfully stated, "Now, before I ask you whether you want to have a plea bargain, I have given you all the information that I believe you need to make an informed decision. But was there something else you wanted to ask of me?" (Tr. 51-52.) Goldwin replied that he needed more time to decide. The court then gave Goldwin additional time to consider his options and the matter reconvened two days later on September 7, 2023.

**{¶ 9}** At the outset of the September 7th hearing, Goldwin confirmed that he wanted the plea bargain. The court then again outlined the terms of the proposed agreement. The court explained that it needed to "make a complete and separate record here today," which is why "we're kind of doing the same thing again."

(Tr. 57.) Goldwin assented. The court then again confirmed Goldwin's name, date of birth, citizenship status, and that he was not under the influence of illegal drugs. The court also inquired about Goldwin's mental illnesses and the medication he was taking. Goldwin stated that he believed that the medication was working and that he understood what was "going on in this hearing." (Tr. 59.) Goldwin confirmed that he was satisfied with his attorney and confirmed his understanding that a plea bargain would mean that there is no trial. The court explained and Goldwin confirmed his understanding that by pleading guilty he would be giving up his constitutional right to trial; have guilt proven beyond a reasonable doubt; confront and cross-examine witnesses against him; compulsory process; and remain silent at trial.

{¶ 10} The court again wanted to ensure that Goldwin understood what he was admitting to by pleading guilty and proceeded to detail the individual counts contained in the plea agreement, pausing to confirm that Goldwin understood after each count and Goldwin agreed that he did. Specifically, the court advised that Count 1 was a second-degree felony with a possible minimum prison term of two years and a maximum of eight years and "it could be any number in between . . . three, four, five, six or seven years." (Tr. 65.) The court further advised that the sentence for Count 1 is subject to the Reagan Tokes Law and will be indefinite "because the Department of Rehabilitation and Corrections can extend the prison term that I impose by up to 50 percent depending on essentially your conduct while in prison." (Tr. 67.) With regard to Counts 4 (attempted HWWUD) and 5

(disrupting public service), the court advised that these counts were fourth-degree felonies with a possible prison term of "six to 18 months inclusive in monthly increments." (Tr. 65.) The court then confirmed that Goldwin understood that a guilty plea to the charges would constitute a complete admission that he committed those crimes. The court also advised Goldwin and confirmed that he understood the other consequences he faced by pleading guilty, including postrelease control, restitution, fines, costs, and the possibility that the court could sentence Goldwin that day. The following exchange then occurred:

> THE COURT: So, as we discussed the other day, you really have two choices in this case since you're under indictment. The first choice is to have a trial. And as I told you the other day[,] I can get you a fair trial and you are presumed innocent.
>
> Of course, if you're found guilty there is mandatory prison because of the firearm specs. But the point is I can get you a fair trial.
>
> And on the other hand, if you take that plea bargain it represents a rational decision in that [it] avoids a trial and a worse outcome. Then you're welcome to have a plea bargain because I think you have all the information you need to make a reasonable decision.
>
> I say that introductory to this question: Do you want the trial or a plea bargain?
>
> [GOLDWIN]: Plea bargain, your Honor.
>
> THE COURT: Now, I know we had a long conversation the other day and I basically repeated the same information here this morning but before I ask how you plead do you need a moment or two to confer privately with your lawyer?
>
> [GOLDWIN]: No. I'm just pleading guilty to the to the plea bargain . . . .

(Tr. 72-74.)

{¶ 11} Goldwin then pled guilty to Counts 1 (felonious assault) and 5 (disrupting public service), which were amended by the deletion of the accompanying one-year firearm specification on each of those counts, and Count 4 was also amended to attempted HWWUD. The court accepted Goldwin's guilty pleas and found him guilty. The court ordered a presentence-investigation report and continued the matter for sentencing on October 4, 2023.

{¶ 12} At sentencing, the court stated that it reviewed the presentence-investigation report and made it a part of the record. The State addressed the court, noting that the victim reported she suffered fractured ribs because of the incident. The victim further reported that her wish was not necessarily prison, rather treatment and anger management for Goldwin. Defense counsel addressed the court and requested community-control sanctions. The court also heard from Goldwin, who stated that he never meant to harm the victim, he was trying to "restrain her from not going too far." (Tr. 84.)

{¶ 13} The court stated, "[I]n imposing the following sentence, I've taken into account everything I know about you and everything about your case, including today's statements by the lawyers and you, including the presentence report, and including, in consideration of the sentencing laws, Chapter 2929 of the Ohio Revised Code." (Tr. 85.) The court then stated that Goldwin's sentence was a minimum of 3 years in prison on Count 1, 12 months on Count 4, and 11 months on Count 5, to be served concurrently, with 28 days of jail-time credit. As the court began to advise Goldwin about his indefinite sentence regarding Count 1, Goldwin stated, "I was

supposed to take this to trial." (Tr. 86.) The court continued that 3 years in prison is the "stated minimum, but your maximum term is four and a half years[.]" (Tr. 87.) The court also advised Goldwin that he is subject to a mandatory minimum of 18 months to a maximum of 3 years of postrelease control. Goldwin then stated, "I did that already. I was tricked." (Tr. 88.)

{¶ 14} When the court continued to explain postrelease control, Goldwin stated that he was "frustrated" and "I should have took my case to trial." (Tr. 89.) The court asked Goldwin, "Did I tell you the possible prison term at the plea hearing? I think that I did." (Tr. 90.) Goldwin responded, "I know, but I wanted to take it to trial. . . . I would have rather took it to trial[.]" (Tr. 91.) The following exchange then occurred:

> THE COURT: I didn't promise you anything.
>
> [GOLDWIN]: No, no. I wanted to take my case to trial. That was my whole point. . . .
>
> THE COURT: The thing is though, when we had the change of plea hearing, I think that was on September 5th, if I'm remembering right, we talked about you're forfeiting the trial by having a plea bargain.
>
> [GOLDWIN]: Yeah, but it was still [brought] to me in a different type of way. That's what I'm saying. Like, oh, you know, but, you know, not trying to persuade me, but I still didn't want to do that. It was like I was persuaded to do something I didn't want to do, like, at all. I didn't want to do that. . . .

(Tr. 91-92.)

{¶ 15} Goldwin now appeals, raising the following two assignments of error for review:

**Assignment of Error I:** [Goldwin's] constitutional right of due process was violated when a guilty plea was accepted that was not made voluntarily.

**Assignment of Error II:** [Goldwin's] constitutional right to effective counsel was violated when defense counsel failed to ensure the change of plea was voluntary.

## II. Law and Analysis

### A. Guilty Plea

{¶ 16} In the first assignment of error, Goldwin does not challenge the knowing or intelligent nature of his plea, but rather argues that his change of plea was not voluntarily.

{¶ 17} Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the plea is invalid. *State v. Bishop*, 2018-Ohio-5132, ¶ 10, citing *State v. Clark*, 2008-Ohio-3748, ¶ 25. "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996), citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927); *Mabry v. Johnson*, 467 U.S. 504 (1984); *Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Kelley*, 57 Ohio St. 3d 127 (1991); Crim.R. 11(C).

{¶ 18} To ensure the constitutionality of pleas, Crim.R. 11(C) sets forth specific procedures that trial courts must follow when accepting guilty pleas, covering the waiver of constitutional rights and the explanation of nonconstitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 107-108 (1990). The purpose of Crim.R. 11(C) is "to convey to the defendant certain information so that he [or she] can make

a voluntary and intelligent decision whether to plead guilty." *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). The rule also "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163 (1975).

{¶ 19} In *Dangler*, the Ohio Supreme Court held that in determining whether a trial court complied with Crim.R. 11, reviewing courts shall consider the following questions:

> (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17.

{¶ 20} Goldwin does not argue that the trial court failed to give him the proper constitutional advisements during the plea hearing or that the court failed to completely comply with Crim.R. 11(C). He contends that his plea was not voluntary because he was "tricked" or "persuaded" into pleading guilty.

{¶ 21} We note that while Fed.R.Crim.P. 11(b)(2) explicitly requires trial courts to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)" before accepting a guilty plea, Ohio's Crim.R. 11 does not contain the same requirement. *State v. Cummings*, 2018-Ohio-3994, ¶ 19 (8th Dist.), citing *State v. Staten*, 2005-Ohio-1350, ¶ 31 (7th

Dist.) (noting that the "point of a judge asking whether or not any promises or threats were made that induced the plea is to uncover possible promises and threats made outside of the plea bargaining process" and that Crim.R. 11 "does not explicitly" require a trial court to ask whether any promises or threats were made before accepting a guilty plea, unlike Fed.R.Crim.P. 11(b)(2)); *see also State v. Burks*, 2023-Ohio-72, ¶ 14 (8th Dist.) (where this court found that the defendant's guilty plea was voluntary, even though the trial court did not explicitly ask the defendant if any threats or promises had been made in exchange for pleading guilty, because the trial courts engaged in lengthy colloquy, reviewed the charges against the defendant, explained the possible penalties, and recited the constitutional rights that the appellant was waiving).[1]

{¶ 22} Our review of the record demonstrates that while the trial court's Crim.R. 11 colloquy was thorough, the trial court did not explicitly ask Goldwin at the September 7th hearing if any threats or promises had been made in exchange for pleading guilty. The absence of this exchange at the September 7th hearing, however, does not render Goldwin's plea involuntary. Rather, the questions in the *Dangler* analysis illustrate that Goldwin's plea was voluntary because the trial court did not completely fail to comply with the rule so as to excuse him from demonstrating prejudice. Here, the court's colloquy was extensive. The court explained Goldwin's constitutional rights and ensured that he understood that he

---

[1] In *Cummings*, the appellant did not express any hesitancy about pleading guilty. While this fact is distinguishable from the instant case, the analysis, nevertheless, is the same.

would be waiving them by pleading guilty. The court also described the potential penalties Goldwin faced for each of the charges to which he pled guilty, including the Reagan Tokes advisement, and ensured after each count that Goldwin understood the potential consequences of his plea.

{¶ 23} Moreover, the Ohio Supreme Court has consistently found that Crim.R. 11 does not require a verbatim recitation of the rule. *State v. Miller*, 2020-Ohio-1420, ¶ 17, citing *State v. Griggs*, 2004-Ohio-4415, ¶ 12; *Nero*, 56 Ohio St.3d at 108; *Ballard*, 66 Ohio St.2d at 475-478. Instead, the focus of the analysis is whether the record demonstrates that the trial court explained the rights outlined in Crim.R. 11(C) in a manner reasonably intelligible to the defendant. *Miller* at ¶ 18, citing *Ballard* at 480. "[O]ur focus in reviewing pleas has not been on whether the trial court has '[incanted] the precise verbiage' of the rule, *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1997), but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *Dangler* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *Clark* at ¶ 26; *Miller* at ¶ 19.

{¶ 24} In the instant case, the record reveals that at the September 5th hearing, the trial court stated to Goldwin that it wanted to ensure that if Goldwin "plead guilty today, that [his] guilty plea is voluntary, [and that he is] not being forced or pressured to do that." (Tr. 4.) Additionally, the court was highly receptive to Goldwin's concerns and, ultimately, gave him an additional two days to contemplate his options. Upon reconvening at the September 7th hearing, Goldwin

indicated that he wanted to plead guilty and he did not want to go to trial, which was set for September 13, 2023. Goldwin did not bring up the issue of being "tricked" until he was sentenced on October 4, 2023, which was nearly one month after the plea. Common sense dictates that when reviewing the September 5th hearing in conjunction with the September 7th hearing, Goldwin was not "tricked" or "persuaded" into pleading guilty. Rather, the court was very patient with Goldwin's concerns. Based on the foregoing, there is nothing in the record indicating that Goldwin would not have entered his plea had the trial court explicitly asked whether any threats or promises had been made at the September 7th hearing. Therefore, we find that the trial court thoroughly complied with Crim.R. 11(C) and ensured that Goldwin's plea was voluntarily made.

{¶ 25} Goldwin additionally contends that because he suffers from significant mental health concerns, including paranoid schizophrenia, the court was required to specifically inquire as to whether his change of plea was being entered into voluntarily. He further contends that because he suffers from paranoid schizophrenia, it is plausible that when the court stated that entering a plea "represents a rational decision in that [it] avoids a trial and worse outcome," this statement induced him to choose the plea bargain. (Tr. 73.) Goldwin's assertions, however, are belied by the record.

{¶ 26} Here, the court inquired into Goldwin's mental health diagnosis, the medications he was taking, and whether this impacted his understanding of the proceedings. Goldwin replied that it did not, and he believed the medication was

working. The court was satisfied with his responses. We note that the "mere fact that a defendant suffered from a mental illness or was taking psychotropic medication under medical supervision when he entered a guilty plea is not an indication that his plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting the defendant's guilty plea." *State v. McClendon*, 2016-Ohio-2630, ¶ 16 (8th Dist.), citing *State v. Robinson*, 2007-Ohio-6831, ¶ 18 (8th Dist.); *State v. Harney*, 1997 Ohio App. LEXIS 1768, *4 (8th Dist. May 1, 1997); *State v. Bowen*, 1996 Ohio App. LEXIS 5612, *9 (8th Dist. Dec. 12, 1996); *State v. McDowell*, 1997 Ohio App. LEXIS 113, *4 (8th Dist. Jan. 16, 1997); *State v. Ketterer*, 2006-Ohio-5283, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial."); *see also State v. Knight*, 2021-Ohio-3674, ¶ 31 (8th Dist.), citing *State v. Carson*, 2021-Ohio-209, ¶ 12 (8th Dist.). As stated above, the court thoroughly complied with Crim.R. 11. Goldwin's speculation, without more, is insufficient to render his plea involuntary.

{¶ 27} Accordingly, the first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 28} In the second assignment of error, Goldwin argues defense counsel was ineffective for failing to ensure that his guilty plea was voluntarily made. Goldwin further argues that defense counsel had an obligation to inquire as to who had "tricked" him and persuaded him to do something he did not want to do.

{¶ 29} To establish ineffective assistance of counsel, Goldwin must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 2009-Ohio-2961, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697. In Ohio, every properly licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Davis*, 2021-Ohio-4015, ¶ 25 (8th Dist.), citing, *State v. Black*, 2019-Ohio-4977, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). When evaluating counsel's performance on an ineffective assistance of counsel claim, the court "must indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.), quoting *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.) ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'").

{¶ 30} We note that with regard to guilty pleas and ineffective assistance of counsel claims, the Ohio Supreme Court has found that a guilty plea waives the right to claim ineffective assistance of counsel, except to the extent that the defects complained of caused the plea to be less than knowingly and voluntarily made. *State*

*v. Spates*, 64 Ohio St.3d 269, 272 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

{¶ 31} We decline to find defense counsel ineffective. Goldwin's assertion that he was "tricked" and "coerced" into pleading guilty are speculative and are not substantiated in the record. As discussed in the first assignment of error, the trial court fully complied with Crim.R. 11, Goldwin stated that he was satisfied with his attorney, and the court ensured that Goldwin's plea was voluntarily made. This court cannot speculate on trial counsel's conversations with Goldwin or plea advice. *State v. Jacobs*, 2020-Ohio-895, ¶ 10 (1st Dist.), citing *State v. Reinhardt*, 2014-Ohio-4071, ¶ 13, 16 (1st Dist.) ("Absent some indicia that [defendant's] counsel threatened him, provided improper inducements for him to plead guilty, or engaged in some other inappropriate action, we cannot determine how the 'incident' rose to the level of coercion.").

{¶ 32} Therefore, Goldwin has not established that defense counsel's performance was deficient, and the second assignment of error is overruled.

{¶ 33} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR